**In re TRANS–LINES WEST, INC. d/b/a AAMCO Transmissions, Debtor.**

**Maurice K. GUINN, Trustee, Plaintiff,**

**v.**

**Donald P. LINES and United States of America, Defendants.**

Bankruptcy No. 95–30883.
Adv. No. 96–3126.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 17, 1996.

Gentry, Tipton, Kizer & McLemore, P.C., Maurice K. Guinn, Trustee, Knoxville, TN, for Plaintiff Maurice K. Guinn.

Carl K. Kirkpatrick, United States Attorney, Knoxville, TN, Michael J. Martineau, United States Department of Justice, Tax Division, Washington, DC, for Defendant U.S.

Kite & Jones, Charles W. Kite, Sevierville, TN, for Defendant Donald P. Lines.

### MEMORANDUM ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

RICHARD S. STAIR, Jr., Chief Judge.

The Debtor, Trans–Lines West, Inc., a corporation, operated a business known as AAMCO Transmissions located at 8844 Kingston Pike, Knoxville, Tennessee. The Debtor owns the real estate upon which its business was operated. On April 29, 1989, the Debtor, through Internal Revenue Service Form 2553, elected to be treated as a Subchapter S corporation under the Internal Revenue Code. On August 14, 1989, the Internal Revenue Service (IRS) accepted the Debtor's Subchapter S election in a Notice of Acceptance as an S–Corporation. By a Statement dated March 15, 1995, the Debtor elected to revoke its Subchapter S status. The Statement was not signed. By a Statement of Consent also dated March 15, 1995, Defendant Donald P. Lines, the Debtor's sole shareholder, consented to the revocation of the Debtor's Subchapter S status. The Statement of Consent was not signed. On April 17, 1995, the IRS accepted the Debtor's revocation of its Subchapter S status in a Notice of Revocation of Status as an S–Corporation.[1]

On April 12, 1995, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. On February 22, 1996, an Order was entered approving the United States Trustee's appointment of Maurice K. Guinn as Chapter 11 Trustee. Thereafter, on June 3, 1996, the Trustee commenced this adversary proceeding pursuant to 11 U.S.C.A. §§ 544(b) and 548(a) (West 1993). The Trustee's state law claims relied upon in support of his § 544(b) action are grounded upon Tenn.Code Ann. §§ 66–3–305 through 308 (1993). The Trustee's Complaint, as initially filed, seeks to avoid the Debtor's prepetition revocation of its Subchapter S status under the theory that the revocation constitutes a fraudulent transfer or conveyance.[2]

The court has before it cross-motions for summary judgment. On October 7, 1996, the IRS filed a motion entitled "Internal Revenue Service's Motion to Dismiss or for Summary Judgment." Due to the novelty and complexity of the issues raised by the parties, the IRS filed a Request for Oral Argument on Internal Revenue Service's Motion

---

1. The Internal Revenue Code (I.R.C.), codified at title 26 of the United States Code, provides in material part at § 1362:

 **(a) Election.—**
 **(1) In general.**—Except as provided in subsection (g), a small business corporation may elect, in accordance with the provisions of this section, to be an S corporation.
 **(2) All shareholders must consent to election.**—An election under this subsection shall be valid only if all persons who are shareholders in such corporation on the day on which such election is made consent to such election.
 ....
 **(d) Termination.—**
 **(1) By revocation.—**
 **(A) In general.**—An election under subsection (a) may be terminated by revocation.

**(B) More than one-half of shares must consent to revocation.**—An election may be revoked only if shareholders holding more than one-half of the shares of stock of the corporation on the day on which the revocation is made consent to the revocation.
I.R.C. § 1362(a), (d) (West Supp.1996).

2. The Trustee desires to sell the Debtor's real property but believes that the estate would incur a prohibitive capital gains tax liability as a result of the Debtor's status as a C corporation. On February 16, 1996, the Debtor's Kingston Pike real property was appraised at a value of $800,-000.00. The Trustee is of the opinion that the Debtor's basis in this property is $350,000.00. The property is encumbered with liens in favor of the Small Business Administration and Internal Revenue Service.

to Dismiss or for Summary Judgment on October 16, 1996. Pursuant to an October 17, 1996 Order, the court set the matter for oral argument. On October 28, 1996, the Trustee filed a Motion to Amend Complaint and a Plaintiff Trustee's Response to Internal Revenue Service's Motion to Dismiss or for Summary Judgment. The matter came on for oral argument on October 29, 1996, at which time the court, upon agreement of the IRS, granted the Trustee's Motion to Amend Complaint and continued the oral argument on the IRS's motion to give the Trustee an opportunity to file a cross-motion for summary judgment. The Trustee filed his Amended Complaint on October 29, 1996. The Amended Complaint, in addition to its reiteration of the allegations of fraudulent transfer and conveyance contained in the original Complaint, seeks a determination that the prepetition revocation of the Debtor's status as a Subchapter S corporation was fatally defective; that the Debtor never properly revoked its Subchapter S status; and that the Debtor remains a Subchapter S corporation today as a result. On November 8, 1996, the Trustee filed a Motion for Summary Judgment on the issue of whether the Debtor's status as a Subchapter S corporation was effectively revoked. The IRS filed an Opposition to Trustee's Motion for Summary Judgment on November 19, 1996. The foregoing motions and responses are supported by documents and affidavits executed by the Trustee and Michael J. Martineau, trial counsel for the IRS. Oral argument was heard on November 25, 1996.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (H), (O) (West 1993).

## I

Fed.R.Civ.P. 12(b), made applicable to this adversary proceeding through Fed. R.Bankr.P. 7012(b), dictates that motions to dismiss for failure to state a claim are to be treated as summary judgment motions when-

ever "matters outside the pleading are presented to and not excluded by the court." However, the court possesses absolute discretion in determining whether it will accept the evidence presented apart from the pleadings. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992). In the instant proceeding, the court exercises its discretion to accept the affidavit and exhibits attached to the Internal Revenue Service's Motion to Dismiss or for Summary Judgment. Therefore, the IRS's motion will be treated exclusively as a motion for summary judgment.

Pursuant to Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding through Fed.R.Bankr.P. 7056, summary judgment is available only when a party is entitled to a judgment as a matter of law and when, after consideration of the evidence presented by the pleadings, affidavits, answers to interrogatories, and depositions in a light most favorable to the nonmoving party, there remain no genuine issues of material fact. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The factual dispute must be genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989).

## II

The court will first address the Trustee's Motion for Summary Judgment which "requests entry of a judgment that the [D]ebtor's S–Corporation status has not been revoked." The Trustee argues that the Debtor's revocation of its Subchapter S status was invalid because it failed to comply with all of the requirements of revocation set forth in Treas.Reg. § 1.1362–6 (1992). Specifically, the Debtor's Statement of revocation and Donald P. Lines's Statement of Consent were not signed.[3] In its Opposi-

---

**3.** Treas.Reg. § 1.1362–6 (1992) provides in material part:

(a) **Time and manner of making elections—** (1) *In general.* An election statement made under this section must identify the election being made, set forth the name, address, and taxpayer identification number of the corpora-

tion, and be signed by a person authorized to sign the return required to be filed under section 6037.

. . . .

(3) *Revocation of S election—*(i) *Manner of revoking election.* To revoke an election, the corporation files a statement that the corpora-

tion to Trustee's Motion for Summary Judgment, the IRS argues that the Trustee lacks standing to challenge the validity of the Debtor's Subchapter S status.

■■■ The doctrine of standing is comprised of "several judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984), *reh'g denied*, 468 U.S. 1250, 105 S.Ct. 51, 82 L.Ed.2d 942 (1984), *and reh'g denied*, 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984). One such limitation is the "general prohibition on a litigant's raising another person's legal rights." *Id.* In the present proceeding, the IRS contends that "[t]he validity of the revocation, as is the validity of all tax filings with the IRS, is a matter solely between the taxpayer and the IRS." (Opp'n to Trustee's Mot. for Summ.J. at 7.) The IRS advanced a similar argument in *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

In this Court petitioners have argued that a policy of the IRS to tax or not to tax certain individuals or organizations, whether embodied in a Revenue Ruling or otherwise developed, cannot be challenged by third parties whose own tax liabilities are not affected. Their theory is that the entire history of this country's revenue system, including but not limited to the evolution of the Code, manifests a consistent congressional intent to vest exclusive authority for the administration of the tax laws in the Secretary and his duly authorized delegates, subject to oversight by the appropriate committees of Congress itself. It is argued that allowing third-party suits questioning the tax treatment accorded other taxpayers would transfer determination of general revenue policy away from those to whom Congress has entrusted it and vest it in the federal courts.

*Id.* at 36, 96 S.Ct. at 1923 (footnote omitted). The *Simon* Court, however, did "not reach ... the question of whether a third party ever may challenge IRS treatment of another." [4] *Id.* As a result, courts must perform a case by case inquiry into the standing of the party challenging the tax liability of a third party. *See Allen*, at 751–52, 104 S.Ct. at 3325. The party seeking the court's jurisdiction bears the burden of alleging facts that clearly demonstrate that he or she is " 'a proper party to invoke judicial resolution of the dispute.' " *United States v. Hays*, ––– U.S. –––, –––, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231–32, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990) (quoting *Warth v. Seldin*, 422 U.S. 490, 517, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975))).

■■■ The doctrine of standing " 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.' " *Valley Forge Christian College v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982) (quoting *Flast v. Cohen*, 392 U.S. 83, 98, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968); *see also Warth*, at 498, 95 S.Ct. at 2205 ("[T]he question of standing is whether

---

tion revokes the election made under Section 1362(a).... Each shareholder who consents to the revocation must consent in the manner required under paragraph (b) of this section....

....

**(b) Shareholders' consents**—(1) *Manner of consents in general.* A shareholder's consent required under paragraph (a) of this section must be in the form of a written statement that sets forth the name, address, and taxpayer identification number of the shareholder, the number of shares of stock owned by the shareholder, the date (or dates) on which the stock was acquired, the date on which the shareholder's taxable year ends, the name of the S corporation, the corporation's taxpayer identification number, and the election to which the shareholder consents. The statement must be signed by the shareholder under penalties of perjury.... [T]he election of the corporation is not valid if any required consent is not filed in accordance with the rules contained in this paragraph (b). The consent statement should be attached to the corporation's election statement.

4. Justice Stewart, in a concurring opinion, stated:

I add only that I cannot now imagine a case, at least outside the First Amendment area, where a person whose own tax liability was not affected ever could have standing to litigate the federal tax liability of someone else.

*Simon*, at 45–46, 96 S.Ct. at 1928 (Stewart, J., concurring).

the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). The doctrine "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth,* at 498, 95 S.Ct. at 2205; *accord Franchise Tax Bd. v. Alcan Aluminium Ltd.,* 493 U.S. 331, 334–35, 110 S.Ct. 661, 664, 107 L.Ed.2d 696 (1990), *reh'g denied,* 494 U.S. 1012, 110 S.Ct. 1311, 108 L.Ed.2d 488 (1990). The constitutional limitations ask whether (1) the plaintiff suffered an injury; (2) there is sufficient causation between the plaintiff's injury and the conduct set forth in the plaintiff's complaint; and (3) the plaintiff's injury is redressable. *Hays,* at ——, 115 S.Ct. at 2435; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The prudential limitations include those "principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). One such prudential limitation prohibits a litigant from asserting the rights of a third party. *Powers v. Ohio,* 499 U.S. 400, 409–10, 111 S.Ct. 1364, 1370–71, 113 L.Ed.2d 411 (1991); *Allen,* at 750, 104 S.Ct. at 3324; *Gladstone,* at 101–04, 99 S.Ct. at 1609–10; *Warth,* at 498, 95 S.Ct. at 2205; *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 165–66, 92 S.Ct. 1965, 1968, 32 L.Ed.2d 627 (1972). With the exception of an express or implied right of action created by Congress, courts cannot entertain the merits of a claim if the plaintiff cannot meet its burden as to this prudential requisite of the standing doctrine.[5] *See Gladstone,* at 99, 99 S.Ct. at 1608; *Warth,* at 498–500, 95 S.Ct. at 2205–06.

This court is confronted with the issue of whether a bankruptcy trustee can challenge the validity of a debtor's revocation of its Subchapter S status. The IRS claims that the Trustee lacks standing to do so because the validity of the revocation is a matter purely between the Debtor and the IRS. It argues that the standing doctrine precludes the Trustee from asserting the rights of a third party. Although the IRS is correct in its assertion of the prudential limitations of the standing doctrine, the bankruptcy trustee is a unique entity that succeeds to certain rights of a debtor. Therefore, to resolve the standing issue it is first necessary to determine precisely the rights of a bankruptcy trustee.

A debtor's filing of a petition in bankruptcy automatically creates a bankruptcy estate. This estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1993). Included within this broad category of interests are any causes of action held by the debtor. *Cottrell v. Schilling (In re Cottrell),* 876 F.2d 540, 542 (6th Cir.1989). Upon the commencement of the case, the bankruptcy trustee succeeds to all of the legal and equitable interests of the debtor that form the bankruptcy estate, including causes of action. *In re Sanders,* 969 F.2d 591, 593 (7th Cir.1992) ("Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest."); *Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988) ("A trustee in bankruptcy succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed."); *Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986). Therefore, in the present case, the Trustee succeeded to all causes of action held by the Debtor as of April 12, 1995, the date that the Debtor filed its Chapter 11 petition. However, there is a limit to the rights assumed by the Trustee under § 541(a)(1).

---

**5.** There is a second exception to the prudential limitation that precludes a plaintiff from asserting the rights of a third party where: (1) the plaintiff suffered an injury in fact; (2) the plaintiff had a close relationship to the third party; and (3) the third party is unable to protect his or her own interests. *Powers,* at 409–10, 111 S.Ct. at 1370–71. The court finds this exception to be inapplicable to this proceeding because there has been no showing that the shareholder of the Debtor is unable to protect his own interests. In fact, the shareholder, Donald P. Lines, is a party Defendant to the Trustee's present action.

Although paragraph (1) includes choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case. . . . The trustee can assert no greater rights than the debtor himself had on the date the case was commenced.

4 COLLIER ON BANKRUPTCY ¶ 541.06 (15th ed. 1996). Accordingly, to resolve the issue of the Trustee's standing, the court must determine whether the Debtor, standing alone, had the right to challenge the validity of the Subchapter S revocation as of April 12, 1995.

▮▮▮▮ A corporation's election and revocation of the S corporation status under I.R.C. § 1362 [6] is shareholder driven. Although the corporation is the sole entity that makes the election or revocation under I.R.C. § 1362, both acts are contingent upon various degrees of consent by the corporation's shareholders. I.R.C. § 1362(a)(2), (d)(1)(B) (West Supp.1996). Noting the importance of the role of shareholders in the election of the Subchapter S status, the Ninth Circuit has stated: "The desirability of a Subchapter S election depends upon the individual tax considerations of each shareholder. The final determination of whether there is to be an election should be made by those who would suffer the tax consequences of it." *Kean v. Commissioner of Internal Revenue,* 469 F.2d 1183, 1187 (9th Cir.1972). Further highlighting the importance of the shareholder's role in determining the corporate tax status, the Treasury Regulations make it clear that although a corporation may rescind a revocation of its Subchapter S status, such a rescission cannot be made without the consent of all shareholders who consented to the revocation and those that have become shareholders since the revocation occurred. Treas. Reg. § 1.1362–2 (1992).

▮▮▮▮ Given that a corporation cannot alter its tax status through election, revocation or rescission, without some form of shareholder consent, this court is satisfied that the corporation, standing alone, cannot challenge the validity of a prior Subchapter S revocation.[7] This is especially true when a corporate challenge to the validity of a prior revocation is no more than an attempt to rescind the revocation subsequent to its acceptance by the IRS.[8] Therefore, this court concludes that a bankruptcy trustee, although succeeding to the rights of a debtor corporation, cannot challenge the validity of a Subchapter S revocation by the corporation without the consent of at least those shareholders who consented to the revocation.[9] A trustee who attempts to challenge the validity of a revocation without such consent is asserting the rights of a third party. Therefore, this court holds that the Trustee, precluded by prudential limitations from asserting the rights of a third party, does not have standing to challenge the validity of the Debtor's revocation of its Subchapter S status. Accordingly, the Trustee's Motion for Summary Judgment will be denied.

### III

The court also has before it the IRS's Motion to Dismiss or for Summary Judgment. In its Memorandum in Support of Internal Revenue Service's Motion to Dismiss or for Summary Judgment, the IRS

---

6. 26 U.S.C.A. § 1362 (West 1988 & Supp.1996). *See supra* note 1.

7. The statutory and regulatory requirement of shareholder consent both in the corporation's election and revocation of the Subchapter S status is mandated by the tax consequences of such acts. With some exceptions, the income of a corporation electing Subchapter S status is not taxed at the corporate level but is passed through and taxed to its shareholders in a manner similar to a partnership. Items of income, loss, deduction, and credit are generally passed through to shareholders and included on their tax returns in the same form as received, paid or incurred by the corporation. Consequently, both the election and revocation of the Subchapter S status have an impact on a shareholder's tax liability.

8. Treas.Reg. § 1.1362–2(a)(4) (1992) permits a rescission "at any time before the revocation becomes effective."

9. The Trustee's successful challenge of the Debtor's revocation of its Subchapter S status in the present case would have dire tax consequences to the non-consenting shareholder. Upon the Trustee's sale of the Debtor's real estate, the liability for any capital gain would be passed on to the shareholder. Conversely, in its present C corporation status, the Debtor's estate will be liable for the capital gains tax.

contends that it is entitled to a judgment as a matter of law because the Debtor's revocation of its Subchapter S status does not constitute a "transfer of an interest of the debtor in property" under 11 U.S.C.A. § 548(a) or a fraudulent conveyance under Tenn.Code Ann. §§ 66–3–305 through 308.

*11 U.S.C.A. § 548(a) (West 1993)*

Bankruptcy Code § 548(a) provides:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C.A. § 548(a) (West 1993). "Subsection (a) of section 548 consists of an introduction, followed by four substantive divisions— (1); (2)(A)–(B)(i); (2)(A)–(B)(ii); and (2)(A)–(B)(iii)." 4 COLLIER ON BANKRUPTCY ¶ 548.02[1] (15th ed. 1996). The introduction reveals that "[a]n essential element of an action to avoid a particular transaction as fraudulent is that there have in fact been a 'transfer' of an interest of the debtor in property or an 'obligation' incurred by the debtor." 9A Am.Jur.2d *Bankruptcy* § 1813

(1991). The introduction further indicates that the transfer must have been made, or the debtor must have incurred the obligation, within the year preceding the filing of the debtor's bankruptcy petition. § 548(a).

The court will first consider whether the Debtor had a property interest in the subject of the alleged transfer at the time that it was made. In the absence of controlling federal law, the question of whether a debtor possesses an interest in property is governed by state law. *See Barnhill v. Johnson,* 503 U.S. 393, 397–98, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992); *Simpson v. Penner (In re Simpson),* 36 F.3d 450, 452 (5th Cir.1994); *First Fed. Sav. & Loan Assoc. v. Hulm (In re Hulm),* 738 F.2d 323, 326 (8th Cir.1984), *cert. denied,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984). Because the subject of the alleged transfer is the Debtor's status as a Subchapter S corporation, a status created under title 26 of the United States Code, the court will first determine if federal law, and more specifically the Internal Revenue Code, establishes such a property interest.

As a matter of legal definition, "property" refers not to a particular material object but to the right and interest or domination rightfully obtained over such object, with the unrestricted right to its use, enjoyment and disposition. In other words, [in] its strict legal sense "property" signifies that dominion or indefinite right of user, control, and disposition which one may lawfully exercise over particular things or objects; thus "property" is nothing more than a collection of rights.

63A Am.Jur.2d *Property* § 1 (1984) (footnotes omitted); *see also* Black's Law Dictionary 1216 (6th ed. 1990) (defining the term "property" as, *inter alia,* "an aggregate of rights which are guaranteed and protected by the government"). This court finds that I.R.C. § 1362 affords a corporation which has elected the Subchapter S status a guaranteed, indefinite right to use, enjoy, and dispose of that status. Regarding a corporation's right to use and enjoy the status, I.R.C. § 1362(c) provides:

An election under subsection (a) shall be effective for the taxable year of the corpo-

ration for which it is made and for all succeeding taxable years of the corporation, until such election is terminated under subsection (d).

I.R.C. § 1362(c) (West Supp.1996). Therefore, once a corporation elects to be treated as an S corporation, I.R.C. § 1362(c) guarantees and protects the corporation's right to use and enjoy that status until it is terminated under I.R.C. § 1362(d).[10] Moreover, § 1362(d)(1)(A) provides that "[a]n election under subsection (a) may be terminated by revocation." I.R.C. § 1362(d)(1)(A) (West Supp.1996). Thus, I.R.C. § 1362(d)(1)(A) guarantees and protects an S corporation's right to dispose of that status at will. As a result, this court holds that the Debtor possessed a property interest (i.e. a guaranteed right to use, enjoy and dispose of that interest) in its Subchapter S status on March 15, 1995, the date that this status was allegedly transferred.

The next issue which must be addressed is whether there was a "transfer" of this property interest as that term is used in 11 U.S.C.A. § 548(a). The term "transfer," as used throughout the Bankruptcy Code, is defined as follows:

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

11 U.S.C.A. § 101(54) (West 1993). The Supreme Court, construing the meaning of "transfer" within the context of the Bankruptcy Act of 1898, commented on the term as follows:

All technicality and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means and manner by which

property can pass from the ownership and possession of another, and by which the result forbidden by the statute may be accomplished.

*Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 442–44, 21 S.Ct. 906, 908–09, 45 L.Ed. 1171 (1901). The legislative history to the Bankruptcy Reform Act of 1978, the present version of the Code, indicates that Congress intended the definition of the term "transfer" to be as broad as possible. H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6271. One bankruptcy court has construed this legislative intent as follows: "Section 101(54) does not speak in terms of an effect on creditors: rather, it focuses on what, if anything, the debtor parted with. The all-encompassing language unambiguously comprehends *any* disposition of *any* interest in property." *Wiswall v. Wallaert (In re Wallaert)*, 149 B.R. 665, 668 (Bankr.W.D.Wash.1992). *See also Barnhill*, at 399, 112 S.Ct. at 1390 ("We acknowledge that § 101(54) adopts an expansive definition of transfer.").

Neither party to this proceeding has presented case law addressing the issue of whether the revocation of a corporation's Subchapter S status constitutes a "transfer" within the context of § 548(a). However, both parties have referred to *Gibson v. United States (In re Russell)*, 927 F.2d 413 (8th Cir.1991), where the Eighth Circuit held that an election to carry forward net operating losses under I.R.C. § 172(b)(3) (West Supp. 1996) constituted a "transfer" under § 548(a). *Russell* involved a tax refund action brought by a Chapter 11 trustee. The debtor had made both prepetition and postpetition[11] elections under I.R.C. § 172(b)(3) to carry forward net operating losses (NOLs). These elections, once made, were irrevocable for the current tax year pursuant to I.R.C. § 172(b)(3)(C) (West 1988).[12] The trustee

---

**10.** *See supra* note 1.

**11.** The debtor managed the corporation as a debtor-in-possession for the first eight months after it filed its petition.

**12.** Similarly, the decision to revoke the Subchapter S status, once made, is irrevocable for five years pursuant to I.R.C. § 1362(g) which provides:

If a small business corporation has made an election under subsection (a) and if such election has been terminated under subsection (d), such corporation (and any successor corporation) shall not be eligible to make an election under subsection (a) for any taxable year before its 5th taxable year which begins after the 1st taxable year for which such termination is

filed amended income tax returns for the corporation, claiming a tax refund of $1,234,-134.00 as a result of carrying back the NOLs that the debtor had previously elected to carry forward. When the IRS denied the refund, the trustee filed a tax refund action in the bankruptcy court. The trustee argued that the estate was entitled to the refund because the debtor's election to carry forward the NOLs was void under § 548(a). The IRS argued that § 548(a) was inapplicable because an election under the Internal Revenue Code does not constitute a transfer under the Bankruptcy Code. The court concluded that an irrevocable election under the Internal Revenue Code constitutes a transfer under the Bankruptcy Code and held that a trustee could utilize § 548(a) to avoid such an irrevocable election. *Russell*, 927 F.2d at 419. In reaching this conclusion, the court noted the legislative intent regarding the definition of "transfer." *Id.* at 418. Moreover, the Eighth Circuit recognized that trustees have been given " 'extraordinary' " avoidance powers for the purpose of protecting the estate for the sake of creditors. *Id.* at 416 (quoting *In re Haugen Constr. Serv., Inc.,* 104 B.R. 233, 239 (Bankr.D.N.D.1989)). The court reasoned that these factors, combined with a debtor's ability to manipulate the Internal Revenue Code to the detriment of the estate, require the conclusion that an irrevocable election constitutes a transfer under the Bankruptcy Code. *Id.* at 417.

 The court finds *Russell* to be persuasive as a result of its similarity with the present proceeding. Similar to *Russell*, this court is confronted with the question of whether an irrevocable, prepetition act, pursuant to the debtor's rights under the Internal Revenue Code, constitutes a transfer for purposes of § 548. In this regard, the only significant difference between the two proceedings is that the former involved an election regarding NOLs while the latter involves the revocation of a Subchapter S

election. However, this is not a distinguishing factor since both acts achieved the same purpose: the potential increase of the debtor's tax liability.[13]

Given the Bankruptcy Code's broad definition of "transfer" and the Eighth Circuit's holding in *Russell,* this court holds that the Debtor's prepetition revocation of its Subchapter S status constitutes a "transfer" under § 548(a). Accordingly, the IRS's Motion to Dismiss or for Summary Judgment will be denied as to its contention that the revocation of the Debtor's Subchapter S status does not constitute a "transfer of an interest of the debtor in property" under § 548(a).

### Tenn.Code Ann. §§ 66–3–305 through 308 (1993)

 The IRS claims that the Debtor's revocation of its Subchapter S status was not a "fraudulent conveyance" under Tenn.Code Ann. §§ 66–3–305 through 308, applicable to this proceeding pursuant to Bankruptcy Code § 544(b) which provides:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C.A. § 544(b) (West 1993). In its Memorandum in Support of Internal Revenue Service's Motion to Dismiss or for Summary Judgment, the IRS does not address the definition of "conveyance" under Tennessee law but instead argues that the revocation, as a matter of law, was not "fraudulent." In support of this argument, the IRS claims that "an individual has the right to structure his financial affairs in his own best interest." According to the IRS, this right includes the right to engage in pre-bankruptcy planning. The IRS contends that the exercise of this

---

effective, unless the Secretary consents to such election.

I.R.C. § 1362(g) (West Supp.1996).

**13.** In *Russell,* the potential existed that the election to carry forward the NOLs would not increase the overall tax liability of the debtor's

estate if the debtor could generate enough profits to utilize the NOLs prior to the close of the case. In this proceeding, it was possible that the revocation of the Subchapter S status would not increase the tax liability of the estate if the Trustee chose not to sell the Debtor's real property.

right is not "fraudulent" under Tennessee law.

 The IRS's argument is misplaced. The relevant provisions of the Tennessee Code provide as follows:

> **Conveyances by insolvent without fair consideration declared fraudulent.**—Every conveyance made and every obligation incurred by a person[14] who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to such person's actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

Tenn.Code Ann. § 66–3–305 (1993).

> **Conveyances by persons in business in fraud of creditors.**—Every conveyance made without fair consideration, when the person[15] making it is engaged or is about to engage in a business or transaction for which the property remaining in such person's hands, after the conveyance, is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business transaction without regard to such person's actual interest.

Tenn.Code Ann. § 66–3–306 (1993).

> **Conveyances before debt incurred.**—Every conveyance made and every obligation incurred without fair consideration, when the person[16] making the conveyance or entering into the obligation intends or believes that debts will accrue beyond the party's ability to pay as they mature, is fraudulent as to both present and future creditors.

Tenn.Code Ann. § 66–3–307 (1993).

> **Conveyances with intent to defraud.**—Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud, either present or future creditors, is fraudulent as to both present and future creditors.

Tenn.Code Ann. § 66–3–308 (1993). The foregoing provisions explicitly set forth a concise equation to determine whether a conveyance is fraudulent. No exception is made for pre-bankruptcy planning. The single case cited by the IRS, *Ernst v. O'Brien (In re O'Brien),* 67 B.R. 317 (Bankr.N.D.Iowa 1986), addresses the prepetition conversion of non-exempt assets into exempt assets. *O'Brien* has no application to the matter presently before the court. The foregoing statutory provisions set forth clear guidelines to determine whether a conveyance is fraudulent. Because no exception is made for pre-bankruptcy planning, the court holds that pre-bankruptcy planning under the Internal Revenue Code may constitute a "fraudulent" conveyance if such an act falls within the purview of Tenn.Code Ann. §§ 66–3–305 through 308.

Although the IRS, in its Memorandum in Support of Internal Revenue Service's Motion to Dismiss or for Summary Judgment, does not address the issue of whether the revocation of a Subchapter S election constitutes a "conveyance" under Tenn.Code Ann. §§ 66–3–305 through 308, it does state that the revocation could not be deemed a "fraudulent conveyance." The term "conveyance" is defined as follows:

> "Conveyance" includes every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or encumbrance[.]

Tenn.Code Ann. § 66–3–301(2) (1993). The court is not aware of, and the parties have not cited, any Tennessee decisions that further construe the meaning of this term. Given that it has already been determined that the Debtor's revocation of its Subchapter S status constituted a "transfer" under the Bankruptcy Code, the court does not see why the same act would not constitute a "conveyance" under Tenn.Code Ann. § 66–3–301(2). This is particularly true in light of the fact that the IRS has presented no authority to the contrary. Similar to the definition of

---

**14.** The term "person" is undefined under Tennessee's version of the Uniform Fraudulent Conveyance Act. The court will presume for purposes of this Memorandum that a "person" includes a corporation such as the Debtor.

**15.** *See supra* note 14.

**16.** *See supra* note 14.

"transfer" under the Bankruptcy Code, the definition of the term "conveyance" provided in § 66–3–301(2) appears, on its face, to be extremely broad and inclusive.[17] Accordingly, the court holds that the Debtor's revocation of its Subchapter S status constitutes a "conveyance" under Tenn.Code Ann. § 66–3–301(2).

For the foregoing reasons, the IRS's Motion to Dismiss or for Summary Judgment will be denied as to its contention that the revocation of the Debtor's Subchapter S status could not, as a matter of law, constitute a "fraudulent conveyance" under Tenn.Code Ann. §§ 66–3–305 through 308.

## IV

As a final matter, the court notes that it is undisputed that the Debtor revoked its Subchapter S status on March 15, 1995, and filed its Chapter 11 petition on April 12, 1995. This finding satisfies the third introductory requirement of § 548(a) which mandates that the transfer be made within one year of the filing of the Debtor's petition. Therefore, the issues remaining for trial, as set forth in this court's September 4, 1996 Pretrial Order, are as follows:

(1) Was the transfer/conveyance of the Debtor's S corporation status made with actual intent to hinder, delay or defraud creditors? (11 U.S.C.A. § 548(a)(1) and Tenn.Code Ann. § 66–3–308)

(2) Did the Debtor receive less than a reasonably equivalent value in exchange for the transfer, and was the Debtor: (a) insolvent on the date of the revocation or did it become insolvent as a result of the revocation; or (b) engaged in business for which any property remaining to the debtor was an unreasonably small capital; or (c) intending to incur, or believing it would incur, debts beyond Debtor's ability to pay

as the debts matured? (11 U.S.C.A. § 548(a)(2))

(3) Did the Debtor receive a fair consideration in exchange for the conveyance? (Tenn.Code Ann. §§ 66–3–305 through 307)

(4) Was the conveyance made at a time when the Debtor was insolvent or did it render the Debtor insolvent? (Tenn.Code Ann. § 66–3–305)

(5) When the conveyance occurred, was the Debtor engaged in a business for which the property remaining in its hands after the conveyance was an unreasonably small capital? (Tenn.Code Ann. § 66–3–306)

(6) Did Donald P. Lines and/or the Debtor make the conveyance intending or believing that the debts the debtor would accrue would be beyond the Debtor's ability to pay as they matured? (Tenn.Code Ann. § 66–3–307)

Finally, as to the relief sought by the Trustee, a rescission of the Debtor's revocation of its Subchapter S status, the court notes that such relief cannot be granted. Instead, if the Trustee successfully carries his burden as to the remaining issues, the proper form of relief is the avoidance of the Debtor's revocation. *See Russell,* 927 F.2d at 417. If the revocation is avoided, it would be as if it never occurred. *Id.*

An order consistent with this Memorandum will be entered.

## *ORDER*

For the reasons set forth in the Memorandum on Cross–Motions for Summary Judgment filed this date, the court directs the following:

---

**17.** Tennessee has enacted the Uniform Fraudulent Conveyance Act at Tenn.Code Ann. §§ 66–3–301, et seq. (1993). *Martin v. Butcher (In re Butcher),* Ch. 7 Case No. 83–01008, Adv. No. 86–0184, slip op. at 3 n. 2, 1987 WL 60302 (Bankr. E.D.Tenn. Nov. 10, 1987). In discussing the breadth of the various state code provisions that have been patterned after this Act, the following has been noted:

> The terms of the fraudulent conveyance statutes are broad enough to include every trans-

action by which creditors or others may be defrauded; it is not the nature or form of the transaction, but the presence of fraud, which brings the case within the prohibition of the statutes. Many devices and instruments have been resorted to for the purpose of covering up fraud, but whenever the law is invoked they are declared to be nullities[.]

37 Am.Jur.2d *Fraudulent Conveyances* § 58 (1968) (footnotes omitted).

1. The Internal Revenue Service's Motion to Dismiss or for Summary Judgment filed October 7, 1996, by the Defendant United States of America is DENIED. The court finds as a matter of law that the Debtor's revocation of its Subchapter S status on March 15, 1995, constituted a "transfer of an interest of the [D]ebtor in property" for purposes of the Plaintiff's avoidance action under 11 U.S.C.A. § 548 (West 1993) and a "conveyance" under Tenn.Code Ann. §§ 66–3–305 through 308 (1993) for purposes of the Plaintiff's avoidance action under 11 U.S.C.A. § 544(b) (West 1993). The court further finds as a matter of law that this conveyance may be fraudulent if it falls within the purview of Tenn.Code Ann. §§ 66–3–305 through 308 (1993).

2. The Plaintiff's Motion for Summary Judgment filed November 8, 1996, is DENIED. The court finds as a matter of law that the Plaintiff does not have standing to challenge the Debtor's revocation of its Subchapter S status on March 15, 1995.

3. The following issues remain to be resolved by the court at the January 10, 1997 trial of this adversary proceeding:

(A) Was the transfer/conveyance of the Debtor's S corporation status made with actual intent to hinder, delay or defraud creditors? (11 U.S.C.A. § 548(a)(1) (West 1993) and Tenn.Code Ann. § 66–3–308 (1993));

(B) Did the Debtor receive less than a reasonably equivalent value in exchange for the transfer, and was the Debtor: (a) insolvent on the date of the revocation or did it become insolvent as a result of the revocation; or (b) engaged in business for which any property remaining to the Debtor was an unreasonably small capital; or (c) intending to incur, or believing it would incur, debts beyond Debtor's ability to pay as the debts matured? (11 U.S.C.A. § 548(a)(2) (West 1993));

(C) Did the Debtor receive a fair consideration in exchange for the conveyance? (Tenn.Code Ann. §§ 66–3–305 through 307 (1993));

(D) Was the conveyance made at a time when the Debtor was insolvent or did it render the Debtor insolvent, and did the Debtor receive a fair consideration in exchange for the conveyance? (Tenn.Code Ann. § 66–3–305 (1993));

(E) When the conveyance occurred, was the Debtor engaged in a business for which the property remaining in its hands after the conveyance was an unreasonably small capital? (Tenn.Code Ann. § 66–3–306 (1993)); and

(F) Did Donald P. Lines and/or the Debtor make the conveyance intending or believing that the debts the Debtor would accrue would be beyond the Debtor's ability to pay as they matured? (Tenn.Code Ann. § 66–3–307 (1993)).

SO ORDERED.