In re BAKERSFIELD WESTAR, INC., Debtor.

Randell PARKER, Chapter 7 Trustee, Appellant,

v.

Craig R. SAUNDERS and Jodie K. Saunders; United States of America, Internal Revenue Service; and United States Trustee, Appellees.

BAP No. EC–97–1307–RRYJ.
Bankruptcy No. 94–11027–B–7K.
Adversary No. 96–1137.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Oct. 16, 1998.

Michael S. Abril, T. Scott Belden, Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP, Bakersfield, CA, for Randell Parker, Trustee.

William C. Beall, Santa Barbara, CA, for Craig R. and Jodie K. Saunders.

Michael J. Desmond, U.S. Department of Justice, Tax Division, Washington, DC, for USA, Internal Revenue Service.

Before RUSSELL, RYAN, and JONES, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The bankruptcy court denied the chapter 7 [1] trustee's motion for partial summary judgment in a § 548 action against the corporate debtor's principals and the Internal Revenue Service. The court entered a judgment in favor of all defendants. We REVERSE and REMAND.

## I. FACTS

Bakersfield Westar, a California corporation ("Bakersfield"), provided air and ground ambulance services in Kern County, California. Bakersfield's president, appellee Craig R. Saunders, and his wife, appellee Jodie K. Saunders, co-owned 100% of Bakersfield's stock as community property.

On January 1, 1992, Craig Saunders submitted to the Internal Revenue Service an election to have Bakersfield treated as a subchapter S corporation for federal income tax purposes,[2] beginning with tax year 1992. On February 1, 1994, Mr. Saunders submitted to the IRS a statement of revocation of Bakersfield's subchapter S election, together with a statement of the Saunders' consent to the revocation of the election. The legal effect of the statement of revocation, which the IRS deemed effective as of February 1, 1994, was to make Bakersfield a "C" corporation (i.e., a separate taxable entity) for federal income tax purposes.

The Saunders filed a voluntary chapter 7 petition on February 14, 1994. The trustee in the Saunders' bankruptcy case filed a voluntary chapter 7 petition on behalf of Bakersfield (hereinafter the "debtor") on March 4, 1994. Due to the prepetition revocation of the debtor's subchapter S election (the "Revocation"), the debtor's bankruptcy estate did not succeed to the debtor's subchapter S tax attributes because the attributes had already passed through to the Saunders.

Appellant Randell Parker was appointed as the trustee in the debtor's case (the "trustee"). The trustee filed an adversary proceeding in March 1996 against the Saunders, the Saunders' bankruptcy trustee, and the IRS, seeking to avoid the Revocation as a fraudulent transfer under §§ 544(b) and 548, and CAL. CIV. CODE § 3439 *et seq.*

The complaint alleged that the Saunders submitted the Revocation to the IRS with the intent to shift to the debtor the significant capital gains tax burden that would arise from the future sale or other disposition (e.g., foreclosure) of the debtor's assets, and with the actual intent to hinder, delay, and defraud creditors. The complaint alleged in the alternative that the debtor received less than a reasonably equivalent value in exchange for the Revocation. The Saunders' and the IRS's answers to the complaint denied the material allegations, and the IRS's answer contended that applicable treasury regulations provided the exclusive means by which a taxpayer's revocation of a subchapter S election could be rescinded or set aside.[3]

In October 1996, the trustee moved for partial summary judgment to avoid the Revocation as a fraudulent transfer under § 548(a)(1) on the grounds that the debtor's right to make or revoke its subchapter S election was "property," and the Revocation of that election was a "transfer" within the meaning of § 548. The motion included the IRS as a respondent because the trustee requested an order directing the IRS to disregard the Revocation and reinstate the debtor's subchapter S status, retroactive to the date the Revocation was deemed effective, in order to restore the *status quo ante.*

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Such an election has the effect of characterizing the corporation as a "pass through" entity, with all items of income, loss, deduction, and credit flowing through the corporation to be reported on the personal tax returns of the corporation's principals.

   In this case, the election authorized Bakersfield's taxable income to "pass through" to its principals, the Saunders, and any taxes due on the debtor's income were the Saunders' obligation and were reported on their personal tax returns. The election also permitted the Saunders to use the debtor's net operating losses and other tax attributes as an offset to their personal taxable income.

3. The Saunders' bankruptcy trustee also filed an answer. The trustee subsequently stipulated to his dismissal from the case.

The trustee analogized the "property" in this case to a debtor's right to carry forward a net operating loss ("NOL"),[4] which he contended has been recognized as "property" by several courts. He analogized the "transfer" in this case to a debtor's election to carry forward NOLs, which he contended those courts have recognized as a "transfer" of property.[5]

The trustee contended that the debtor's election to be treated as a subchapter S corporation constituted a valuable property right because its corporate status allowed the debtor to pass its (and hence the bankruptcy estate's) tax liabilities through to its shareholders, the Saunders. He argued that the specific value of the election consisted of the debtor's ability to pass to the Saunders the debtor's estate's capital gains taxes resulting from the sale of over $230,000 in assets and from the future disposition of approximately $2 million in assets through foreclosure.

The trustee asserted that the Revocation constituted a "transfer" because it caused the debtor to "dispose" of its right (and thus the estate's right) to pass its tax liabilities through the Saunders. As a result of the Revocation, the estate's substantial capital gains tax liabilities remained an obligation of the estate and its creditors, rather than an obligation of the Saunders.

The trustee also argued that the Revocation was made with the actual intent to hinder, delay, and defraud creditors. He contended that the following "badges of fraud" demonstrated the necessary intent: the debt-or's failure to receive any direct or indirect value or benefit from the Revocation; the lack of any consideration received for the Revocation; the fact that the transferee, Mr. Saunders, was an officer of the debtor; and the debtor's insolvency (which the trustee inferred from the timing of the Revocation, i.e., about two weeks before the filing of the Saunders' bankruptcy case, and about one month before the filing of the debtor's bankruptcy case).

The IRS's opposition acknowledged that several courts have recognized the right to exercise NOL elections as "property" within the meaning of the Code, but argued that the right to make or revoke a corporation's subchapter S election cannot constitute "property" under § 548 because it has no present value to a taxpayer,[6] is not referenced in the Code, and has not been recognized by any court to constitute "property." The IRS emphasized that a taxpayer's revocation of a subchapter S election has merely the prospective economic impact of changing the tax ramifications of future corporate transactions, and that the Revocation in this case did not deprive the debtor-corporation (or the bankruptcy estate) of anything of economic value, in contrast to the immediate tax consequences which arise from the exercise of NOL elections. The IRS again asserted that the Tax Code provides the exclusive means by which a corporation's subchapter S election may be revoked.

The Saunders' opposition and counter-motion for summary judgment argued that the trustee could not avoid the Revocation under § 548(a) because only a corporation's share-

---

4. NOLs are created when a taxpayer's deductible business expenses for a given year exceed its net income for that year. Once NOLs are sustained, the taxpayer may carry the loss back three years and use it as a deduction in that year. NOLs that remain are applied to the next two years and deducted accordingly. If any loss remains at the end of the three year carry back period, it is carried forward and deducted from the taxpayer's income over the next fifteen years (or until it is exhausted), beginning with the year after the loss was initially sustained. Alternatively, the Internal Revenue Code allows the taxpayer to forego the carry back option and instead use the NOLs exclusively in future years. Such an election, once made, is irrevocable for that tax year. *In re Russell*, 927 F.2d 413, 415 (8th Cir.1991) (citations to applicable Internal Revenue Code provisions omitted).

5. In support of this argument, the trustee cited *In re Russell*, 927 F.2d 413 (8th Cir.1991)(right to carry forward NOLs is "property" for purposes of §§ 548(a) and 541(a)(1)), and *In re Prudential Lines, Inc.*, 107 B.R. 832 (Bankr.S.D.N.Y. 1989), aff'd, 928 F.2d 565 (2d Cir.1991), cert. denied sub nom. 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991)(same).

6. Notwithstanding this argument, the IRS's opposition acknowledged that the Revocation in this case placed the burden of any future tax liability arising from the debtor's liquidation of assets on the debtor, rather than on the Saunders, as would have been the case if the subchapter S election had not been revoked.

holders could elect or revoke a corporation's subchapter S status. They also claimed that Mr. Saunders lacked the necessary actual fraudulent intent because the Revocation was made on the advice of professionals.

The trustee's response asserted that the Revocation deprived the bankruptcy estate of tax attributes it would have otherwise enjoyed, which he argued was similar in nature to the decision to carry forward NOLs, and that the amount of funds available to pay the estate's creditors would be substantially diminished due to the significant tax liabilities caused by the Revocation.

At a hearing on the motion and countermotion on October 30, 1996, the court concluded that the Revocation was not a voluntary or involuntary transfer by the debtor of property or an interest in property, and the right to make or revoke a subchapter S election was not "property" or an "interest in property" within the meaning of the Code. The court also determined that the trustee had failed to establish the elements of § 548(a). In support of its conclusions, the court stated:

> Section 548 talks about transfers made by the debtor. This was not a transfer made by the debtor. The debtor is wholly neutral and ineffective to do anything at all with regard to subchapter S elections or revocations. It's purely within the province of the shareholders to do so.

Transcript of Proceedings October 30, 1996, p. 7.

> [T]here's no recognition that the corporation has benefited or is subject to detriment because of [the election]. The only thrust of the subchapter S election is what the shareholder wants to do about the shareholder's tax liability.

Transcript of Proceedings October 30, 1996, p. 11.

> The corporation had nothing to do with the election, it had nothing to do with the revocation. I cannot find—and that's only one element of the finding—that that could ever be deemed property, apart from any

further finding that it was a result—that there was intent on the part of the—there was a requisite intent.

> But I think the basic concern, at least with respect to the granting of the countermotion for summary judgment, is that this was not—that the debtor did not do the transfer, that it was not an involuntary transfer, and that it was not an interest of the debtor.

Transcript of Proceedings October 30, 1996, pp. 16–17. The court denied the trustee's motion, and granted the Saunders' countermotion. The court *sua sponte* dismissed the IRS as a defendant, although the IRS had not filed a joinder in the counter-motion, and dismissed the complaint in its entirety. The Saunders' counsel transmitted a proposed judgment and order to the court in November 1996.

On March 14, 1997, the court entered an Order Denying Plaintiff's Motion for Partial Summary Judgment, Granting Defendant Saunders' Counter–Motion for Summary Judgment, and Dismissing Complaint Against the United States of America, Sua Sponte, and a Judgment Dismissing Complaint with prejudice as to all defendants. The trustee appeals.[7]

## II. ISSUES [8]

A. Whether the bankruptcy court erred in determining that the prepetition revocation of the debtor's status as a subchapter S corporation was not avoidable by the trustee under § 548(a)(1).

B. Whether the IRS is a proper defendant.

## III. STANDARD OF REVIEW

A motion for summary judgment is reviewed *de novo*. *In re Advent Management Corp.*, 178 B.R. 480, 486 (9th Cir. BAP 1995), *aff'd* 104 F.3d 293, 295 (9th Cir.1997); *In re Bullion Reserve of North America*, 836 F.2d 1214, 1216 (9th Cir.1988), *cert. denied sub nom.* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). The fundamental issue in this case is one of statutory interpretation,

---

7. The trustee filed his Notice of Appeal on April 14, 1997, together with a motion for an extension of time to file the appeal pursuant to Rule 8002(c). The bankruptcy court entered an order granting the motion on July 16, 1997. This order was not appealed by the Saunders or the IRS, and is a final order.

8. The Saunders assert several issues that will not be considered because they have not been properly raised on appeal. They argue that the trustee lacked standing to bring the underlying adversary proceeding. Appellee's [sic] Craig R. Saunders and Jodie K. Saunders Opening Brief ("Saunders' Brief"), pp. 4–5. They also argue that the complaint was void *ab initio* because it was filed in violation of the automatic stay in the

which is subject to the *de novo* standard of review. *In re Mayton*, 208 B.R. 61, 63 (9th Cir. BAP 1997).

## IV. DISCUSSION

A. *Whether The Bankruptcy Court Erred In Determining That The Prepetition Revocation Of The Debtor's Status As A Subchapter S Corporation Was Not Avoidable By The Trustee Under § 548(a)(1).*

1. *Whether a corporate-debtor's prepetition right to make or revoke its election to be treated as a subchapter s corporation for federal income tax purposes constitutes "property" or an "interest of the debtor in property" within the meaning of § 548(a)*

Section 548(a)(1)[9] of the Code, under which the trustee brought his motion for partial summary judgment, allows a trustee to avoid any fraudulent "transfer" of "an interest of the debtor in property." The IRS acknowledges that the Code does not define "interest of the debtor in property." Opening Brief for Appellee the United States of America ("IRS's Brief"), p. 9. However, the IRS repeats its argument from the proceedings below that a debtor's prepetition right to revoke its election under I.R.C. § 1362,[10] to be treated as a subchapter S corporation, is not an "interest of the debtor in property" within the meaning of § 548, because the right has no present value to a taxpayer, and has not been recognized by any court as constituting "property."[11] In contrast, a debtor-corporation's right to use NOLs has a present monetary value (namely, a claim for a tax refund, which can be used by an estate to satisfy creditors), and has long been recognized by courts as "property."

We disagree. This argument unduly limits the definition of "property" to those rights

---

Saunders' personal bankruptcy case. Saunders' Brief, pp. 8–12. These arguments were waived by the Saunders' failure to raise them in the proceedings below.

The Saunders also assert that the bankruptcy court erroneously granted the trustee's motion to extend the time to file this appeal. Saunders' Brief, pp. 4, 5–8. However, the Saunders did not appeal the order granting the extension, which is final. They also did not file a cross-appeal regarding the order in this case.

9. **§ 548. Fraudulent transfers and obligations**

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a

transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

10. I.R.C. § 1362 provides, in pertinent part:

**§ 1362. Election; revocation; termination**

(a) **Election.—**

(1) **In general.**—Except as provided in subsection (g), a small business corporation may elect, in accordance with the provisions of this section, to be an S corporation.

(2) **All shareholders must consent to election.**—An election under this section shall be valid only if all persons who are shareholders in such corporation on the day on which such election is made consent to such election.

. . . .

(d) **Termination.—**

(1) **By revocation.—**

(A) **In general.**—An election under subsection (a) may be terminated by revocation.

(B) **More than one-half of shares must consent to revocation.**—An election may be revoked only if shareholders holding more than one-half of the shares of stock of the corporation on the day on which the revocation is made consent to the revocation.

11. The IRS takes no position in this case regarding the merits of the trustee's claim that the Saunders revoked the debtor's subchapter S status with the actual intent to hinder, delay and

which have a quantifiable "present value." Even if the definition were limited to this extent, the right in question has value to a debtor's estate and is therefore properly characterized as "property." In addition, the IRS's assertion that the right has not been recognized as "property" under the Code is incorrect.

In the absence of federal law, state law determines whether a debtor possesses an interest in property. *In re Feiler,* 218 B.R. 957, 961 (Bankr.N.D.Cal.1998)(citing *Barnhill v. Johnson,* 503 U.S. 393, 397–98, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992)). However, a debtor's subchapter S status is a creation of I.R.C. § 1362, and federal law therefore determines whether a debtor holds a "property" interest in its subchapter S status. *In re Trans–Lines West, Inc.,* 203 B.R. 653, 661 (Bankr.E.D.Tenn.1996).

The United States Supreme Court has defined an "interest of the debtor in property" as "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.,* 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (interpreting "interest of the debtor in property" under § 547).[12] *Begier* pointed to § 541 for guidance in determining the parameters of the definition. *Id.* at 58, 110 S.Ct. 2258. Section 541 includes "all legal or equitable interests of the debtor in property as of the commencement of the case" as property of the bankruptcy estate. 11 U.S.C. § 541(a).

"Property of the debtor" is also defined broadly under Ninth Circuit case law. *In re Bullion Reserve of North America,* 836 F.2d 1214, 1217 (9th Cir.1988), *cert. denied sub nom.* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). "Generally, property belongs to the debtor for purposes of § 547[13] if its transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors." *Id.* at 1217. *See also In re Kimura,* 969 F.2d 806, 810 (9th Cir.1992) (defining property as "generally characterized as an aggregate of rights; 'the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude everyone else from interfering with it.' ")(quoting BLACK'S LAW DICTIONARY 1095 (5th ed.1979)).

A corporation's right to use, enjoy and dispose of its subchapter S status has been held to fall within this broad definition of "property." *In re Trans–Lines West, Inc.,* 203 B.R. 653 (Bankr.E.D.Tenn.1996). The bankruptcy court in *Trans–Lines* held on virtually identical facts[14] that a debtor-corporation's right to revoke its subchapter S status constituted "property" under the Code. *Id.* at 661. It further held that the revoca-

---

defraud creditors. The IRS is solely concerned with the "property" and "transfer" elements of the trustee's claim, because avoidance of the Revocation would "thwart the detailed provisions of the Internal Revenue Code regarding the revocation and rescision [sic] of a Subchapter S election." IRS' Brief, pp. 4–5, and 8.

**12.** The language of § 548 parallels § 547, which allows a trustee to avoid "any transfer of an interest of the debtor in property" where the transfer is preferential under § 547. *In re Advent Management Corp.,* 178 B.R. 480, 486–87 (9th Cir. BAP 1995), *aff'd* 104 F.3d 293 (9th Cir.1997). Thus, cases analyzing § 547 have been applied by courts interpreting § 548. *In re*

*Maple Mortgage, Inc.,* 81 F.3d 592, 595 (5th Cir.1996).

**13.** See footnote 12 above.

**14.** The only factual difference was that the shareholder in *Trans–Lines* did not sign the statement of election and statement of revocation of the debtor's subchapter S status. The trustee in *Trans–Lines* therefore sought to invalidate the revocation based on the shareholder's noncompliance with the technical requirements of the Tax Code, in addition to seeking to avoid the revocation as a fraudulent transfer under § 548. 203 B.R. at 657. There is no dispute in this case concerning the technical compliance of the documents submitted by Mr. Saunders.

tion of that status constituted a "transfer" within the meaning of § 548(a). *Id.* at 663.

The *Trans–Lines* court reasoned that I.R.C. § 1362 affords a corporation that has elected subchapter S status the guaranteed and indefinite right to use, enjoy and dispose of that status. The court focused on § 1362(c), which provides:

An election under subsection (a) shall be effective for the taxable year of the corporation for which it is made and for all succeeding taxable years of the corporation, until such election is terminated under subsection (d).

Thus, the court reasoned, once a corporation elects to be treated as a subchapter S corporation under subsection (a), the right of the corporation to use and enjoy that status is guaranteed under subsection (c) until the corporation elects to terminate the status under subsection (d). The bankruptcy court held that the debtor therefore possessed a property interest, "i.e., a guaranteed right to use, enjoy and dispose of that interest," in its subchapter S status. 203 B.R. at 661. This holding is consistent with the Ninth Circuit's definition of "property."

■ Furthermore, the fact that a right may be prospective in nature does not place it outside the definition of "property." "The main thrust of [§ 541's predecessor under the Act] is to secure for creditors everything of value the [debtor] may possess .... To this end the term property has been construed most generously and an interest is not outside its reach because is it novel or contingent or because its enjoyment must be postponed." *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (declining to exclude the right to NOL carry forwards from definition of property merely because right was intangible and not yet reduced to a tax refund).

■ The ability to not pay taxes has a value to the debtor-corporation in this case. It is estimated that the debtor passed through to the Saunders approximately $2,359,109.00 in taxable losses from its operations during the period between September 30, 1992, and January 1, 1994, while holding its subchapter S status. It is further esti-

mated that the debtor's estate will sustain approximately $400,000.00 in capital gains taxes from the sale and other disposition of its assets during bankruptcy as a result of the Revocation of that status.

The debtor's estate will be required to pay the capital gains taxes on an administrative expense priority basis, and its payment of the taxes will diminish the amount of monies that would otherwise be available to satisfy claims of the debtor's remaining creditors. If the Revocation had not occurred, the Saunders (and thus the creditors of their bankruptcy estate) would have been responsible for payment of these tax liabilities.

Accordingly, we hold that the debtor's prepetition right to make or revoke its subchapter S status constituted "property" or "an interest of the debtor in property" within the meaning of the Code.

2. *Whether the debtor's prepetition revocation of its corporate status election constitutes a "transfer" that may be avoided by a trustee under § 548(a)*

The term transfer, as used throughout the Code, is defined as follows:

"transfer" means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption;"

11 U.S.C. § 101(54).

■ The fraudulent transfer doctrine prohibits the transfer of a debtor's property with either the intent or effect of placing the property beyond the reach of its creditors. *Feiler,* 218 at 962. The underlying purpose of § 548 is to preserve assets of the estate for creditors. *Id.* at 962; *In re United Energy Corp.,* 944 F.2d 589, 597 (9th Cir.1991).

■ Toward that end, Congress has afforded bankruptcy trustees extraordinary powers to avoid and recover transfers in order to preserve the bankruptcy estate. *Russell,* 927 F.2d at 416 (holding bankruptcy trustee may avoid debtor's pre- and postpetition irrevocable election under Tax Code to carry forward NOLs); *Feiler,* 218 B.R. at

962 (same). The trustee in this case argues that the same rationale that led to the holding in *Russell* should compel the conclusion that a trustee has the power to avoid a debtor's prepetition revocation of its subchapter S status.

In *Russell*, the debtor had filed pre- and postpetition tax returns which reflected substantial NOLs. He made an irrevocable election in the returns to carry forward the NOLs and use them to offset future income, rather than to carry back the NOLs and use them to offset past income. The chapter 11 trustee filed amended tax returns for the estate, which claimed a tax refund of approximately $1.2 million as a result of carrying back the NOLs that the debtor had previously elected to carry forward. The IRS denied the refund, and the trustee filed a tax refund action in the bankruptcy court. 927 F.2d at 415.

The IRS moved for summary judgment on the ground that the pre- and postpetition elections were irrevocable under the Tax Code. The trustee's opposition argued that he was seeking to avoid the elections under §§ 548 and 549, not to revoke them. The bankruptcy court declined to address the trustee's "transfer" arguments on the belief that the arguments had not been properly raised in the trustee's pleadings, granted summary judgment for the IRS, and dismissed the trustee's tax refund action. The district court affirmed. *Id.*

The Eighth Circuit Court of Appeals agreed to the parties' request to decide the case on the merits rather than on the procedural grounds found dispositive by the lower courts. The IRS argued before the Eighth Circuit that Congress did not expressly authorize bankruptcy trustees to avoid irrevocable elections, and that administrative chaos would result if the Eighth Circuit were to do so. The trustee argued that allowing a debtor's irrevocable election under the Tax Code to bind bankruptcy trustees would enable debtors to deplete bankruptcy estates and unjustly enrich themselves. The Eighth Circuit concluded that an irrevocable election under the Tax Code constituted a transfer under the Code and that the trustee could avoid the election under § 548(a). *Id.* at 417.

In reaching this conclusion, the Eighth Circuit specifically recognized the extraordinary avoiding powers granted trustees for protecting the estate. It also emphasized that the purpose for the irrevocability of NOL elections was to prevent taxpayer manipulation of the Tax Code:

> We believe that the purpose underlying a bankruptcy trustee's avoidance powers and the danger of permitting a debtor to manipulate improperly the Tax Code require that a trustee have the ability to avoid a debtor's irrevocable election to carry forward NOLs under 26 U.S.C. § 172(b)(3)(C). This ability allows a trustee to avoid an election, not revoke it. Once an election is avoided, however, it is as if the election had never been made, and a trustee is free to elect as she sees fit.

> Therefore, we believe a bankruptcy trustee may seek to avoid a debtor's irrevocable election to carry forward NOLs.

927 F.2d at 416–17.

The bankruptcy court in *Trans–Lines,* which held that the debtor's revocation of its subchapter S election constituted a "transfer" under § 548(a), found the rationale of *Russell* persuasive due to the similarity of the issues presented:

> Similar to *Russell*, this court is confronted with the question of whether an irrevocable, prepetition act, pursuant to the debtor's rights under the Internal Revenue Code, constitutes a transfer for purposes of § 548. In this regard, the only significant difference between the two proceedings is that the former involved an election regarding NOLs while the latter involves the revocation of a Subchapter S election. However, this is not a distinguishing factor since both acts achieved the same purpose: the potential increase of the debtor's tax liability.

203 B.R. at 663.

We agree that there is no significant difference between the issue of an NOL election in *Russell,* and the issue of a revocation of a subchapter S election presented in *Trans–Lines* and in this case. We also share the Eighth Circuit Court of Appeals' concern

regarding taxpayer manipulation of the Tax Code.

In this case, the Saunders claim that there was no indication that the debtor had incurred or would incur any capital gains tax liabilities when the Revocation was made. They contend that their bankruptcy trustee filed the debtor's bankruptcy case without their consent, and that it would be unfair and inequitable to impose the debtor's unforeseen tax liabilities upon them when they had no control over the disposition of the debtor's assets.

■ The Saunders concede, however, that their decision to revoke the corporation's subchapter S status was based upon the recommendation of their professionals. The Revocation was made approximately two weeks prior to their filing personal bankruptcy. It is highly unlikely that the Saunders' professionals would have failed to inform them of the effect of the Revocation on their personal tax obligations and those of the corporation. It is equally difficult to believe that the Saunders's professionals would have failed to discuss with them the possibility that the corporation would also be forced to file bankruptcy and, if that were to happen, that a trustee might sell the debtor's assets and incur significant capital gains taxes as a result.

Thus, the decision to revoke the debtor's subchapter S status appears to reflect careful tax planning, and the Revocation appears to represent an effort by the Saunders to manipulate the bankruptcy system to their personal advantage under the guise of professional tax planning.

The rationale and holdings of *Russell* and *Trans–Lines*, as well as the broad definition of "transfer" under the Code, compel the conclusion that the trustee in this case has the power to avoid the debtor's revocation of

its subchapter S status. This result is consistent with the underlying purpose of § 548.

3. *Whether the tax code provisions governing subchapter s elections limit a trustee's avoiding powers under § 548(a)*

■ The IRS contends that application of § 548 would directly conflict with the Tax Code provisions that regulate subchapter S elections. It insists that the general provisions of § 548 should not be read to override the specific provisions of the Tax Code regarding revocation of subchapter S elections, absent some specific statutory provision granting bankruptcy trustees rights that are not otherwise found in the Tax Code. IRS's Brief, pp. 14–15. The IRS and the Saunders both contend that courts have strictly construed the Tax Code provisions regarding subchapter S corporations, and rejected all efforts to expand their scope and application.[15]

However, courts have long held that Code provisions may override provisions of the Tax Code, even absent specific Congressional or statutory authorization to do so. *See, e.g., Russell,* 927 F.2d at 417 (rejecting IRS's argument that bankruptcy trustees could not avoid irrevocable NOL carry forward elections under the Tax Code absent specific Congressional authorization); *Feiler,* 218 B.R. at 963 (rejecting contention that more recent and specific provisions of I.R.C. § 1398 limit more general provisions of § 548).

Furthermore, the cases cited by the IRS and the Saunders regarding restrictive interpretation of the Tax Code's subchapter S provisions concern the effect of the subchapter S provisions on shareholders' individual tax obligations outside of bankruptcy. The cases have no relevance to a trustee's power to avoid a revocation under § 548.[16]

---

**15.** The IRS argues that these restrictions are intended to prevent improper manipulation of the Tax Code by unscrupulous taxpayers, in addition to providing the IRS with administrative certainty. IRS's Brief, pp. 15–16. The Revocation in this case appears to reflect the very type of manipulation which the IRS claims the Tax Code restrictions are intended to prevent. *See* Section B, above.

**16.** *See, e.g., Brutsche v. C.I.R.,* 585 F.2d 436 (10th Cir.1978)(determining taxpayers' subchapter S election invalid due to taxpayers' failure to comply with I.R.C. procedural requirements regarding timeliness of election and shareholders' consent); *Marshall v. C.I.R.,* 510 F.2d 259 (10th Cir.1975) (affirming denial of taxpayers' entitlement to deduct NOLs due to corporation's ineligibility to elect subchapter S status); *Calhoun v.*

The IRS and the Saunders also both argue that revocation of a corporation's subchapter S election can only be made with the consent of the corporation's shareholders. They argue that a trustee does not succeed to a corporation's statutory right to make the revocation when the corporation files bankruptcy and, if the Saunders had not made the revocation in this case, the trustee would not have succeeded to their right to do so. In contrast, a bankruptcy estate is specifically authorized under the Tax Code to succeed to a debtor's right to waive NOL carry backs.

This argument fails to distinguish between "avoidance" under the Code in the bankruptcy context, and "revocation" of an otherwise irrevocable election under the Tax Code outside of bankruptcy. The Eighth Circuit Court of Appeals, concluding in *Russell* that a trustee could seek to avoid a debtor's otherwise irrevocable NOL election, stated:

> This ability [to avoid a debtor's irrevocable election under 26 U.S.C. § 172(b)(3)(C) ] allows a trustee to *avoid* an election, not *revoke* it. Once an election is avoided, however, it is as if it has never been made, and a trustee is free to act as she sees fit.

*Russell,* 927 F.2d at 417 (emphasis added).

The IRS also expressed fears that "administrative havoc" will ensue if trustees are allowed to avoid revocations of subchapter S elections. The Eighth Circuit rejected the identical argument in *Russell.* 927 F.2d at 416. In this case, the IRS complains that it might be forced to adjust shareholders' personal income tax returns if trustees are allowed to avoid otherwise valid subchapter S elections. An S corporation may now have more than 75 shareholders in any given year, and the IRS could "conceivably" be forced to adjust all of their personal tax returns, regardless of whether they were parties to the § 548 action or the fraud alleged by the trustee. The IRS contends that the situation would be particularly problematic if avoidance of the election under § 548 were to conflict with the Tax Code's statute of limitations for adjustments to corporate and individual tax returns.

*U.S.,* 370 F.Supp. 434 (W.D.Va.1973)(affirming disallowance of corporate loss deductions on shareholders' individual tax returns due to cor-

This argument is unpersuasive. The IRS acknowledges that the concern is speculative. It routinely adjusts individual and corporate tax returns in the ordinary course of its business. The possibility that the IRS might be required to amend an unknown (and possibly limited) number of additional tax returns in any given year is not an unusual occurrence and certainly will not create "administrative havoc."

## B. *Whether The IRS Is A Proper Defendant*

### 1. *The parties' positions*

The IRS argues that it is not a proper defendant in a § 548(a) action because it is not an initial or subsequent transferee under § 550 from whom the trustee may recover the property transferred or the value thereof. The IRS contends that it had nothing to do with the Saunders' alleged fraud and received nothing of value with respect to the "transfer" of the debtor's right to revoke its subchapter S election, and therefore cannot be considered a transferee within the meaning of § 550.

The IRS also claims that the trustee conceded in the proceedings below that § 550 was inapplicable to the relief requested, but that he argued that the United States was nevertheless a proper party because he intended to ask the bankruptcy court to issue a judgment directing the IRS to reinstate the debtor's subchapter S status. The IRS contends that such a declaration by the bankruptcy court would be expressly precluded by the terms of 28 U.S.C. § 2201 (the Declaratory Judgment Act).

The trustee counters that the IRS's argument takes an unduly narrow view of the trustee's ability to join the United States as a defendant in a § 548 action, by relying solely on the trustee's remedies under § 550. He also contends he was required by FED. R. CIV. P. 19(a) to join as defendants at the commencement of the adversary proceeding all persons in whose absence complete relief could not be afforded among those already

poration's failure to timely elect subchapter S status); *Rowland v. U.S.,* 315 F.Supp. 596 (W.D.Ark.1970)(same).

parties. The trustee believes that complete relief cannot be afforded unless the IRS is joined as a defendant.

The trustee further argues that 28 U.S.C. § 2201 is irrelevant because the trustee is not seeking declaratory relief against the IRS; instead, he is seeking an order that avoids a transfer, and wants to ensure that the IRS recognizes the order. The trustee cites a number of cases which he claims stand for the proposition that courts have found 28 U.S.C. § 2201 inapplicable in a variety of tax-related circumstances analogous to those presented here.

### 2. The IRS is a proper defendant under 11 U.S.C. §§ 548 and 550

■ We agree with the trustee that the IRS is a proper defendant. In a very real sense, the right to the subchapter S status was transferred from the debtor back to the IRS. Because we have held that it was a fraudulent transfer, the appropriate remedy is for the IRS to transfer the status back to the debtor. The IRS has never explained at what point, if ever, the IRS would be required to transfer back the subchapter S status to the debtor. If not now, when?

The IRS's argument in its brief that the trustee has an adequate remedy by suing Mr. Saunders for damages as a result of the fraudulent loss of the subchapter S status is frivolous. The IRS cannot be serious that they expect the trustee to sue and then attempt to collect damages from Mr. Saunders. Rather, the time is now for the IRS to return the subchapter S status to the debtor.

### 3. The trustee's complaint does not implicate 28 U.S.C. § 2201 [17]

■ It is difficult to determine how serious the IRS is regarding the § 2201 issue. This may be due to the fact that, as stated above, it is clear that the trustee is not seeking declaratory relief. Rather, the trustee is seeking an order avoiding a fraudulent transfer and seeking an order directing the IRS to reinstate the debtor's subchapter S status. We also agree with the trustee that § 2201 is irrelevant. The only mention of § 2201 is at the end of the IRS's reply brief which states in relevant part: "In this regard, the declaration purportedly sought by appellant would appear to be expressly precluded by the terms of the Declaratory Judgment Act, 28 U.S.C. § 2201." We also note that the IRS did not raise the § 2201 defense in *Russell, Feiler* or *Trans–Lines*.

The trustee is not now seeking a declaration of the tax liability of the bankruptcy estate. But even if he were seeking such a determination under § 505, such a determination is specifically not prohibited by § 2201. The trustee is seeking relief under specific federal statutes, §§ 548 and 550.

As the trustee points out, courts have found § 2201 inapplicable in a variety of tax-related matters. For instance, in *In re Dolard*, 519 F.2d 282 (9th Cir.1975), the Ninth Circuit held that in spite of § 2201, the bankruptcy court properly determined that no amount of federal income tax had accrued against the bankruptcy estate after bankruptcy and to order that the trustee was not personally liable for any such federal income taxes which thereafter might be assessed against the bankruptcy estate.

In *Bostwick v. United States*, 521 F.2d 741 (8th Cir.1975), the Eight Circuit held that the bankruptcy court had jurisdiction to determine dischargeability of a federal tax debt, though the United States had not filed a proof of claim or otherwise participated in or consented to the proceedings; and that, pending such determination, the bankruptcy court had jurisdiction to enjoin the district

---

**17.** 28 U.S.C. § 2201 provides in part:

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an anti-dumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Action of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

director from collecting the taxes in question notwithstanding either the Declaratory Judgment Act or the Anti–Injunction Act.

Lastly, in *McKenzie v. United States,* 536 F.2d 726 (7th Cir.1976), the IRS argued that § 2201 prohibited the bankruptcy court from determining the dischargeability of a debtor's tax debt under old § 17 now § 523.

> The government suggests that, in invoking Section 17(c) to obtain a determination of dischargeability of his tax indebtedness, taxpayer is actually seeking a declaratory judgment, and that the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that declaratory judgments may not be obtained with respect to federal taxes. We agree with the *Bostwick* court that "it is manifestly clear that the 'applications' are not requests for declaratory judgments in the sense that the statute is intended to prohibit", 521 F.2d 741, 747. But even if the proceeding instituted pursuant to Section 17(c) could be analogized to a declaratory judgment action, we see no reason why Congress may not provide for such a remedy in a statute, separate and apart from the Declaratory Judgment Act. In excluding determinations as to federal taxes under 28 U.S.C. § 2201, Congress clearly did not preclude itself from allowing similar determinations in bankruptcy proceedings pursuant to Section 17(c). As the *Bostwick* court noticed, we "cannot believe that Congress gave the bankruptcy court jurisdiction to determine the dischargeability of tax debts where the United States has not filed a proof of claim, as we have held, and then intended that the determination should be prohibited by the Declaratory Judgment Act." *Bostwick,* supra at 747.

*McKenzie* at 729.

As in the above cases, the trustee's cause of action, although relating to taxes, was brought under specific Code §§ 548 and 550.

## V. CONCLUSION

The bankruptcy court based its denial of the trustee's motion for partial summary judgment on the erroneous determination that the debtor's right to make or revoke an election to be treated under the Tax Code as a subchapter S corporation for federal income tax purposes did not constitute an "interest of the debtor in property," and the debtor's prepetition revocation of its subchapter S election did not constitute a "transfer" of property, within the meaning of § 548(a). The IRS was a proper defendant and the trustee's action was not precluded by the terms of § 2201. We REVERSE and REMAND for further proceedings consistent with this decision.