**In re James Kenneth FEILER and Carol Elaine Feiler, Debtors.**

**United States of America, Internal Revenue Service, Appellant,**

**v.**

**Edward F. Towers, Chapter 7 Trustee, Appellee.**

**BAP No. NC–98–1184–RyMeR.**

**Bankruptcy No. 95–31075 DM.**

**Adversary No. 97–3242 DM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 21, 1999.

Decided Feb. 9, 1999.

David L. Denier, Assistant U.S. Attorney, San Francisco, CA, for U.S.A., Internal Revenue Service.

Michael J. McQuaid, Carr, McClellan, Ingersoll, Thompson & Horn, San Francisco, CA, for Edward F. Towers, Trustee.

Before: RYAN, MEYERS, and RUSSELL, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

Debtors James and Carol Feiler ("Debtors") elected to carry forward their net operating losses ("NOL") for the 1993 tax year approximately five months prior to filing their bankruptcy petition. After Debtors filed their chapter 7[1] bankruptcy petition, appellee Edward F. Towers, the chapter 7 trustee ("Trustee"), filed a complaint (the "Complaint") against the United States of America requesting that the bankruptcy court avoid Debtors' election as a fraudulent transfer. The bankruptcy court granted summary judgment in favor of Trustee, holding that the prepetition NOL election constituted a fraudulent transfer. The United States filed a timely appeal. We AFFIRM.

## I. FACTS

The facts are undisputed. On October 10, 1994, Debtors filed their 1993 federal tax return, reflecting an NOL of $971,930. Debtors exercised an irrevocable election (the "Election") pursuant to Internal Revenue Code ("IRC") § 172(b)(3)[2] to carry forward their 1993 NOL to offset future in-

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. IRC § 172(b)(3) provides:
   Election to waive carryback.—Any taxpayer entitled to a carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year. Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be irrevocable for such taxable year.
   26 U.S.C. § 172(b)(3).

come.[3] The parties agreed that without the Election, Debtors could have carried their NOL back and received a tax refund of approximately $287,493.

On March 29, 1995, Debtors filed a chapter 7 bankruptcy petition. In February 1997, Trustee submitted income tax refund requests to the Internal Revenue Service (the "IRS") for the 1990 and 1991 tax years in the amount of $167,817 and $119,676, respectively. The IRS disallowed the refund requests.

On March 26, 1997, Trustee filed the Complaint which was later amended to include the tax refund claims. The United States filed an answer. Both parties filed cross motions for summary judgment (the "Cross Motions") and executed a stipulation (the "Stipulation") providing that if the Election was avoided, Trustee would be entitled to a net tax refund of $266,032.[4]

The United States argued that: (1) neither the Election nor the relinquishment of a potential claim to an NOL carryback tax refund constituted a transfer of an interest of Debtors in property for purposes of § 548(a)(2)[5]; and (2) IRC § 1398,[6] which provides that an estate shall succeed to and take into account a debtor's tax attributes, including NOL carryovers, determined as of the first day of a debtor's taxable year in which the bankruptcy case is commenced, precluded Trustee from avoiding the Election under § 548(a)(2).[7]

A hearing on the Cross Motions was held on December 8, 1997, and the matter was taken under submission. On March 3, 1998, the bankruptcy court granted summary judgment in favor of Trustee. *See Towers v. United States (In re Feiler),* 218 B.R. 957 (Bankr.N.D.Cal.1998). On March 20, 1998, the bankruptcy court entered an order (the "Order") granting Trustee's motion for summary judgment and denying the United States' motion for summary judgment.

The United States filed a timely notice of appeal.

---

**3.** In general, an NOL is carried back to each of three preceding years to offset taxable income (beginning with the earliest year first). Then, to the extent that it has not been absorbed, the NOL is carried forward to each of the next fifteen years. *See* 26 U.S.C. §§ 172(b)(1) and (2) (1991) (the version of the statute in effect when the Election was made). A taxpayer may irrevocably elect to relinquish his three-year carryback period. *See* 26 U.S.C. § 172(b)(3)(C). In that case, he may use the NOL only by carrying it forward to offset income in subsequent years. *Id.*

**4.** This amount reflects a stipulated offset of $21,461. In October 1995, Debtors filed their income tax return for the 1994 tax year. As a result of the carry forward of their NOL from 1993 to 1994, Debtors paid $21,461 less in 1994 income taxes.

**5.** Section 548 provides in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

. . . .

11 U.S.C. § 548(a)(2) (1994).

**6.** IRC § 1398 provides in pertinent part:

§ 1398. Rules relating to individuals' title 11 cases

(a) Cases to which section applies.—Except as provided in subsection (b), this section shall apply to any case under chapter 7 (relating to liquidations) or chapter 11 (relating to reorganizations) of title 11 of the United States Code in which the debtor is an individual.

. . . .

(g) Estate succeeds to tax attributes of debtor.—The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

(1) Net operating loss carryovers.—The net operating loss carryovers determined under section 172.

. . . .

26 U.S.C. §§ 1398(a) and (g).

**7.** The Cross Motions are not included in the excerpts of record. The United States' arguments are gleaned from the bankruptcy court's published opinion.

## II. ISSUES

A. Whether the bankruptcy court erred when it held that the Election was a transfer of an interest in property of Debtors that could be avoided by Trustee under § 548(a)(2).

B. Whether the bankruptcy court erred in holding that IRC § 1398 did not limit Trustee's avoidance powers under § 548(a)(2).

## III. STANDARD OF REVIEW

■ We review rulings on summary judgment de novo. *See Bank of Los Angeles v. Official PACA Creditors' Comm. (In re Southland + Keystone),* 132 B.R. 632, 637 (9th Cir. BAP 1991). Similarly, issues of statutory interpretation are reviewed de novo. *See Parker v. Saunders (In re Bakersfield Westar, Inc.),* 226 B.R. 227, 231–32 (9th Cir. BAP 1998) (citation omitted).

## IV. DISCUSSION

A. *The Bankruptcy Court Did Not Err in Holding That the Election Was an Avoidable Transfer Under § 548(a)(2).*

The bankruptcy court, relying on the Eighth Circuit's holding in *Gibson v. United States (In re Russell),* 927 F.2d 413 (8th Cir.1991), held that: (1) an IRC § 172(b)(3) NOL election was an interest of Debtors in property; (2) the Election constituted a transfer pursuant to § 548 because it disposed of Debtors' right to a current tax refund in exchange for the right to carry forward their NOL; and (3) the transfer was fraudulent because (a) the parties stipulated that it was made within one year of the filing of the bankruptcy petition, Debtors did not receive reasonably equivalent value, and Debtors were insolvent at the time the Election was made, and (b) the United States directly benefitted from the Election because it was not required to pay a $247,493 tax refund.

1. *Debtors' Rights to the NOL Carryback and the Potential Tax Refunds Were Interests of Debtors in Property.*

The bankruptcy court held that "both the right to a loss carryback refund claim and

the tax refund are interests of Debtors in property for purposes of ... § 548 and are also considered property of the estate under ... § 541." *Feiler,* 218 B.R. at 962. We agree.

■ Federal law governs whether an NOL carryover is an interest of a debtor in property. *See* 26 U.S.C. § 1398(g)(1); *Bakersfield Westar,* 226 B.R. at 233 (applying federal law to determine whether a debtor corporation's subchapter S status was an interest of the debtor in property). The Ninth Circuit has defined "property of the debtor" broadly. *See Bakersfield Westar,* 226 B.R. at 233 (citing *Danning v. Bozek (In re Bullion Reserve of N. Am.),* 836 F.2d 1214, 1217 (9th Cir.), *cert. denied sub nom.* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988)). " 'Generally, property belongs to the debtor ... if its transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors.' " *Id.* (quoting *Bullion Reserve,* 836 F.2d at 1217). *See also United States v. Battley (In re Kimura),* 969 F.2d 806, 810 (9th Cir.1992) (defining property as "an aggregate of rights; 'the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude everyone else from interfering with it.' ") (quoting BLACK'S LAW DICTIONARY 1095 (5th ed.1979)). The United States Supreme Court has construed the term "property" very generously " 'and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.' " *Neuton v. Danning (In re Neuton),* 922 F.2d 1379, 1382 (9th Cir.1990) (quoting *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)).

In *Russell,* a case involving similar facts, the Eighth Circuit held that a debtor's right to carry forward an NOL was property of the debtor for purposes of § 548. *See Russell,* 927 F.2d at 417–19 (citing *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.),* 107 B.R. 832, 836 (Bankr.S.D.N.Y.1989), *aff'd,* 119 B.R. 430 (S.D.N.Y.1990)). The court found that when the debtor in possession elected to carry forward his NOL, the election involved property or an interest in property. *Id.*

We recently followed *Russell* and held that a debtor corporation's "prepetition right to make or revoke its subchapter S status constituted 'property' or 'an interest of the debtor in property' within the meaning of the Code." *Bakersfield Westar*, 226 B.R. at 234.[8] We noted that the irrevocable revocation of the debtor-corporation's subchapter S status caused the debtor-corporation to "dispose" of its right (and thus the estate's right) to pass its tax liabilities through to the debtor-corporation's principals. Over the years, the principals had received a significant tax benefit as a result of the debtor-corporation passing through its losses, because the arrangement permitted them to use the debtor-corporation's net operating losses and other tax attributes as an offset to their personal income.

As a result of the revocation, the estate's substantial capital gains tax liabilities became an obligation of the estate and its creditors, rather than remaining an obligation of the debtor-corporation's principals, and payment of those tax liabilities would have diminished estate funds that would otherwise have been available to satisfy the claims of the debtor-corporation's creditors. *Id.* at 230. Consequently, because the debtor-corporation's subchapter S status gave the debtor-corporation the ability to pass through capital gains tax liabilities to its principals, the right to make or revoke its subchapter S status had a value to the debtor and constituted property or an interest of the debtor in property. *Id.* at 233–34.

■ Similarly, Debtors' right to carry forward or carry back an NOL is an interest in property. *See Russell*, 927 F.2d at 417. An NOL is a tax attribute of the debtor that is part of the bankruptcy estate under IRC § 1398(g)(1). *See* 26 U.S.C. § 1398(g)(1). The parties stipulated that without the Election, Debtors or Trustee could have carried back the NOL and received a tax refund. As the bankruptcy court correctly held, "[t]he associated right to claim a refund based on the loss carryback was a property interest of Debtors at the time of the Election and

would have been part of the estate had it not been transferred before the commencement of the bankruptcy case." *Feiler*, 218 B.R. at 961. This conclusion is consistent with the Supreme Court's decision in *Segal*, 382 U.S. at 380–81, 86 S.Ct. 511.

In *Segal*, the issue before the Court was whether an NOL carryback refund claim was property of the estate under § 70a(5) of the Bankruptcy Act of 1898. *Id.* at 379, 86 S.Ct. 511. After the debtors filed their bankruptcy petition, they sought NOL carryback tax refunds from the losses that arose prepetition. The debtors argued that they held a property interest in the refund claim because it arose postpetition. *Id.* at 380, 86 S.Ct. 511.

The Court held that the refund claim was "property" within the definition of § 70a(5) of the Act because "[the refund claim] is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5)." *Id.* Because the trustee acquired the debtors' title to property that the debtors held prepetition, the Court necessarily found that the debtors had a property interest in the refund claim as of the date the petition was filed. The Court also rejected the suggestion that the debtors' right to the refund could not arise before the claim had been filed (i.e., postpetition), stating that "postponed enjoyment does not disqualify an interest as 'property.'" *Id.* The Court's holding in *Segal* remains good law under the Code. *See Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516, 1519 (10th Cir.1991).

Accordingly, the bankruptcy court did not err in concluding that the NOL carryback and the associated right to a potential tax refund were interests of Debtors in property within the meaning of § 548(a).

### 2. The Election Constituted a Transfer Within the Meaning of § 548(a)(2).

The United States argues that the bankruptcy court erroneously held that the Election constituted a transfer of property be-

---

8. "Such an election has the effect of characterizing the corporation as a 'pass through' entity, with all items of income, loss, deduction, and credit flowing through the corporation to be re-

ported on the personal tax returns of the corporation's principals." *Bakersfield Westar*, 226 B.R. at 229 n. 2.

cause Debtors did not dispose of or part with an interest in property; rather, they *transformed* their right to claim an NOL deduction from a right that had to be carried back to prior years to a right that could be carried forward to subsequent years. The United States contends that because the Election was irrevocable and resulted in the termination of Debtors' right to carry back the NOL, the estate only received Debtors' right to claim the NOL deduction in subsequent years.

Section 548(a)(2) authorizes a trustee to avoid a debtor's transfer of property made within one year of the bankruptcy filing if (1) the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation and (2) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. *See* 11 U.S.C. § 548(a)(2). The term "transfer" is defined broadly to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). The purpose of § 548 is to preserve assets of the bankruptcy estate for the benefit of creditors, *see Bakersfield Westar,* 226 B.R. at 234 (citing *Wyle v. C.H. Rider & Family (In re United Energy Corp.),* 944 F.2d 589, 597 (9th Cir.1991)), and to prohibit "the transfer of a debtor's property with either the intent or effect of placing the property beyond the reach of its creditors." *Id.* (citing *Feiler,* 218 B.R. at 962).

Our holding in *Bakersfield Westar* is dispositive of this issue, as conceded by the United States at oral argument on appeal. In *Bakersfield Westar,* we held that the shareholders' prepetition revocation of the debtor's subchapter S status constituted a "transfer" that could be avoided by the trustee. We followed the rationale in *Russell, Feiler,* and *In re Trans–Lines West, Inc.,* 203 B.R. 653, 662–63 (Bankr.E.D.Tenn.1996), and concluded that "there is no significant difference between the issue of an NOL election in *Russell,* and the issue of a revocation of a subchapter S election presented in *Trans–Lines* and in this case." *Bakersfield Westar,* 226 B.R. at 235. We recognized that, similar to the irrevocability of NOL elections, the purpose of the irrevocability of subchapter S elections under the IRC was to avoid taxpayer manipulation. *Id.* (citing *Russell,* 927 F.2d at 416–17; *Trans–Lines,* 203 B.R. at 663).[9] Consequently, because the shareholders' decision to revoke the debtor's subchapter S status represented an effort to manipulate the bankruptcy system to their personal advantage "under the guise of professional tax planning" and fell within the broad definition of "transfer" for purposes of § 548, the trustee had the authority to avoid the irrevocable revocation of the debtor's subchapter S status. *See Bakersfield Westar,* 226 B.R. at 236.

Here, the Election to carry forward Debtors' NOL had the effect of placing Debtors' assets beyond the reach of their creditors. As the bankruptcy court aptly found:

> When Debtors made the Election to carry the NOL forward and preserve their benefits for future taxable years, they effectively placed a valuable asset beyond the reach of their creditors. Rather than immediately making a claim for a cash refund, Debtors chose to defer this tax attribute to postpetition years for their benefit and to the detriment of their creditors.

*Feiler,* 218 B.R. at 962. Thus, similar to the shareholders' revocation of the debtor's subchapter S status in *Bakersfield Westar,* the Election to carry forward Debtors' NOL for

---

9. The Eighth Circuit described a trustee's ability to avoid an irrevocable election to carry forward an NOL as follows:

> We believe that the purpose underlying a bankruptcy trustee's avoidance powers and the danger of permitting a debtor to manipulate improperly the Tax Code require that a trustee have the ability to avoid a debtor's irrevocable election to carry forward NOLs under 26

U.S.C. § 172(b)(3)(C). This ability allows a trustee to avoid an election, not revoke it. Once an election is avoided, however, it is as if the election had never been made, and a trustee is free to elect as she sees fit.

Therefore, we believe a bankruptcy trustee may seek to avoid a debtor's irrevocable election to carry forward NOLs.

*Russell,* 927 F.2d at 417.

their personal advantage postpetition and to avoid paying their creditors was a manipulation that constituted a transfer for purposes of § 548.[10] Like the revocation of the debtor's subchapter S status in *Bakersfield Westar*, which had the effect of transferring a heavy tax burden to the bankruptcy estate (or removing the estate's right to be free from a heavy tax burden), the Election effectively removed Debtors' right to a tax refund from the bankruptcy estate. Thus, the consequence of the Election, the bankruptcy estate's loss of its right to carry back the NOL and receive a tax refund, constituted a transfer for purposes of § 548.

3. *The United States Is Liable As a Transferee Under § 550(a).*

The United States contends that assuming that the Election was a fraudulent transfer, the bankruptcy court erred in holding that it was liable as a "transferee" under § 550(a)[11] because the United States did not receive any transfer as a result of Debtors' relinquishment of their NOL carryback. Thus, the United States asserts that Trustee's remedy is solely against Debtors. Trustee argues that the United States was a transferee because it escaped having to pay a tax refund based on its receipt of the NOL carryback.

Again, our holding in *Bakersfield Westar* is dispositive. In *Bakersfield Westar*, the IRS argued that it was not a proper defendant in the § 548(a) action because it was not an initial or subsequent transferee under § 550(a). *See Bakersfield Westar*, 226 B.R. at 237. The IRS further argued that "it had nothing to do with the [shareholders'] alleged fraud and received nothing of value with respect to the 'transfer of the debtor's right to revoke its subchapter S election, and therefore cannot be considered a transferee

within the meaning of § 550." *Id.* We rejected the IRS's arguments and held that "[i]n a very real sense, the right to the subchapter S status was transferred from the debtor back to the IRS." *Id.* at 238.

■ Similar to the IRS in *Bakersfield Westar*, the United States in this case was the "transferee" of the right to the NOL carryback. The Election had the effect of transferring Debtors' right to their NOL carryback to the United States in exchange for Debtors' right to carry forward their NOL in the future. Indeed, if Debtors do not have income in future years to offset their NOL, the United States will benefit by retaining tax payments that it otherwise would have had to refund to the bankruptcy estate but for the Election. Consequently, the United States was the "transferee" of Debtors' right to the NOL carryback and the related right to a tax refund. Thus, we conclude that the United States was a transferee under § 550.

B. *The Bankruptcy Court Did Not Err in Holding That IRC § 1398 Does Not Limit Trustee's Avoidance Powers Under § 548.*

The United States argues that the specific language of IRC § 1398(g)(1), which provides that the estate shall succeed to any NOL carryovers *determined as of the first day of the debtor's taxable year in which the case commences*, trumps the general fraudulent transfer language of § 548. Specifically, the United States contends that because the Election was irrevocable, Trustee only succeeded to the tax attributes of Debtors as of the date that the bankruptcy petition was filed, which did not include an NOL carryback right.

10. We note that the parties stipulated that the "transfer" was made within one year prior to the date that Debtors' bankruptcy petition was filed, Debtors did not receive reasonably equivalent value, and that Debtors were insolvent at the date that the Election was made. Consequently, all of the elements of § 548(a)(2) have been satisfied.

11. Section 550(a) provides in pertinent part:
§ 550. Liability of transferee of avoided transfer.

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
  (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
  (2) any immediate or mediate transferee of such initial transferee.
11 U.S.C. § 550(a).

The bankruptcy court rejected the United States' argument concluding:

> The avoidance powers granted to the [Trustee] are "so broad that they even enable trustees to avoid transfers considered 'irrevocable' under state law." *In re Russell*, 927 F.2d at 416. The trustee does not seek to revoke the election but to avoid it. "Once an election is avoided, however, it is as if the election had never been made...." *Id.* at 417.

*Feiler*, 218 B.R. at 963–64. The court held that IRC § 1398, which was enacted to maximize the bankruptcy estate assets for creditors, was consistent with the purpose of § 548. Furthermore, Trustee was "not required to take the Debtors' interest in property 'as is' because the trustee has the power to recapture property that the Debtors fraudulently transferred." *Id.* at 964. We agree with the bankruptcy court.

In *Bakersfield Westar*, the IRS contended that the application of § 548 conflicted with the IRC provisions that regulated subchapter S elections. We rejected the IRS's argument. We relied on *Russell*, 927 F.2d at 417, and the trial court's decision in *Feiler*, 218 B.R. at 963, for the proposition that "[Bankruptcy] Code provisions may override provisions of the Tax Code, even absent specific Congressional or statutory authorization to do so." *Bakersfield Westar*, 226 B.R. at 236. We held that the specific IRC provisions governing the "revocation" of subchapter S status which is irrevocable outside of bankruptcy does not preclude the "avoidance" of a fraudulent transfer once a bankruptcy petition was filed. *Id.* at 237. We followed the Eighth Circuit's holding in *Russell* that a trustee could seek to avoid a debtor's otherwise irrevocable NOL election:

> "This ability [to avoid a debtor's irrevocable election under 26 U.S.C. § 172(b)(3)(C) ] allows a trustee to *avoid* an election, not *revoke* it. Once an election is avoided, however, it is as if it has never been made, and a trustee is free to act as she sees fit."

*Id.* (quoting *Russell*, 927 F.2d at 417) (emphasis and alteration added in *Bakersfield Westar* ).

■ We agree with *Russell* and the bankruptcy court in this case that IRC § 172(b)(3)(C), which made the Election irrevocable outside of bankruptcy, did not preclude Trustee from avoiding the fraudulent transfer in bankruptcy. As the bankruptcy court aptly stated:

> It is well established that "when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). There is no actual conflict between I.R.C. § 1398 and Bankruptcy Code § 548. "The policy behind section 548 is to preserve the assets of the estate." *In re United Energy Corp.*, 944 F.2d 589, 597. I.R.C. § 1398 does not contravene this goal. Further, there does not appear to be any authority that supports the notion that the tax attributes that a trustee receives are indelibly affixed such that the trustee may not utilize statutory avoidance powers to alter those attributes. In short, Plaintiff is not required to take the Debtors' interest in property "as is" because the trustee has the power to recapture property that the Debtors fraudulently transferred. The two statutes are neither incompatible nor inconsistent with one another.

*Feiler*, 218 B.R. at 964. We agree with the bankruptcy court's reasoning and hold that IRC § 1398 did not limit Trustee's ability to avoid the Election as a fraudulent transfer under § 548(a)(2).

## V. CONCLUSION

In sum, the bankruptcy court did not err in holding that the right to an NOL carryback refund claim and the related right to a potential tax refund were interests of Debtors in property for purposes of § 548(a)(2). Debtors' right to their NOL carryback had value that could have been used by the bankruptcy estate to repay creditors. The Election, which had the effect of placing the NOL carryback and related tax refunds outside the reach of creditors, constituted a transfer for purposes of § 548(a)(2).

In addition, the bankruptcy court did not err in holding that Trustee could recover Debtors' NOL carryback from the United States as a transferee under § 550(a).

Finally, the bankruptcy court did not err in holding that IRC § 1398 did not limit Trustee's avoidance powers under § 548(a)(2).

Accordingly, we AFFIRM.